IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

UNITED STATES OF AMERICA      §
                                      §           **CAPITAL CASE**

v.                                    §           **NO. W-99-CR-00070(1)**
                                        §           **Execution Date: Sept. 24, 2020**

CHRISTOPHER ANDRÉ VIALVA      §

REPLY TO UNITED STATES'S RESPONSE IN OPPOSITION
TO MOTION TO ENJOIN THE FEDERAL BUREAU OF PRISONS
AND THE UNITED STATES MARSHALS SERVICE FROM
EXECUTING DEFENDANT WITHOUT LEGAL AUTHORITY
AND IN VIOLATION OF FEDERAL AND TEXAS LAW

TO THE HONORABLE COURT:

Christopher André Vialva has requested this Court enjoin the Federal Bureau of Prisons and

the United States Marshals Service from conducting his execution September 24, 2020.  The

controlling order of this Court is the Judgment entered June 16, 2000. The Attorney General has

scheduled Mr. Vialva's execution for September 24, 2020, in derogation of the express terms of the

Judgment and in violation of the Federal Death Penalty Act (FDPA), 18 U.S.C. §3596.  Issues

related to the execution procedures adopted by the United States and to the Constitutional adequacy

of the post conviction review process are being litigated in other appropriate forums.[1]  The sole issue

presented to this Court concerns the legality of the September 24, 2020 execution date.

---

[1]Mr. Vialva filed a challenge to the Constitutionality of the federal death penalty protocol before receiving the Warden's letter.  *See Vialva v. Barr, et al.*, D.D.C. Case No. 1:20-cv-01693-TSC, *Complaint*, Doc. 1 (06/22/2020), consolidated with *In Re Matter of the Federal Bureau of Prisons' Execution Protocol Cases*, D.D.C. Case No. 1:19-mc-00145-TSC, *Order,* Doc. 14 (08/12/2020); *and see Vialva v. Warden, et al.,* S.D. Ind. Case No. 20-CV-00413, filed 08/10/2020, Doc. 1 (*Petition for Writ of Habeas Corpus Pursuant 28 U.S.C. § 2241).*

The United States's argument in opposition to Christopher Vialva's request for injunctive relief is preceded by a section labeled "Background." *Response in Opposition to Motion to Enjoin* (Response), filed 08/25/2020, Doc. 680 at 1-5. The summary extends beyond a chronology and contains the United States's interpretation of the record. To the extent the United States is suggesting Mr. Vialva received a fair trial or a full and fair review of his claims, the record of the post conviction proceedings refutes such a conclusion.[2] It is correct that the notice of the Attorney General's decision to execute Mr. Vialva was provided by a letter from the Warden. *Response* at 5, § IV. The United States has failed to demonstrate either the letter served on Mr. Vialva or the notice it filed with this Court complies with the Federal Death Penalty Act, Texas law, or the plain language of the Judgment entered by Judge Smith. The United States also failed to provide a legal basis excusing its failure to comply with the law and the Court's Judgment.

## I.    The Stay of Execution Contained in the Judgment Is Presently in Place.

The United States devotes the majority of its response in opposition attempting to create an ambiguity and contending the ambiguity supports its actions. A plain reading of the Judgment reveals no ambiguity exists and the United States is bound by the Federal Death Penalty Act, 18 U.S.C. § 3596, to comply with the laws of Texas.[3] Notably, the United States has never sought clarification, correction, or modification of the Judgment.

---

[2]*E.g., Motion for Relief from Judgment Pursuant Rule 60(b)(6), Federal Rules of Civil Procedure,* filed 10/13/2017, Doc. 553; *Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody Pursuant Title 28, United States Code, Section 2255 and Brief in Support*, filed 06/14/2004, Doc. 372; *Volume I, Appendix of Exhibits*, filed 06/14/2004, Doc. 373; *Volume II, Appendix of Exhibits*, filed 06/14/2004, Doc. 374.

[3]*Judgment in a Criminal Case,* filed 06/16/2000, Doc. 289, *appended as Exhibit 1.*

Imposing the sentence of death for Counts 1, 3, and 4, Judge Smith directed that the United States Marshals will take custody of Mr. Vialva "upon the exhaustion of appeals" and will supervise his execution "in the manner prescribed by the laws of Texas."   The second paragraph of Judge Smith's direction provided two contingencies.  First, the Attorney General was authorized to set the "time, place, and manner" of the execution no less than 61 and no more than 90 days after June 16, 2000.  Second, "[i]f an appeal is taken from this conviction and sentence, execution of the sentence shall be stayed pending futher (sic) order of this Court upon receipt of the mandate of the Court of Appeals."  Mr. Vialva's timely direct appeal and timely pursuit of post conviction relief activated the latter provision of the Judgment.  The execution of the sentence of death is stayed by operation of the Judgment.  No subsequent Order of Court has been sought by the United States or entered *sua sponte* by the Court.  The stay remains in place.

## II.     The Attorney General, the Bureau of Prisons, and the Marshal Are Not Authorized to Execute Mr. Vialva in the Absence of Court Order or in Derogation of Controlling Law and Regulation.

The United States claims "longstanding authority" vests the Executive Branch with the power to control executions independent from the Judiciary, citing the general powers clause of Article II and *United States v. Tipton*, 90 F.3d 861, 902-03 (4th Cir. 1996).[4]  *Tipton* did not address the question presented in this case.  *Tipton* recognized the Attorney General's authority to implement regulations governing the  mechanics of how executions would occur once they are ordered, but not whether an execution would be conducted. *Id.,* 90 F.3d at 902–03.  The regulations  considered in *Tipton* require the United States to submit a proposed Judgment and Order stating, "in addition to any other matters required by law," specific circumstances regarding the execution including notice that the execution

---

[4]*Response*, Doc. 680 at 10-11.

will be conducted "on a date and at a place" designated by the Director of the Bureau of Prisons. *See* 28 C.F.R. § 26.2(a)(1)-(4). Requiring the attorney for the government to submit a proposed Order and Judgment to a Court of competent jurisdiction ensures "implementation of the sentence in the manner prescribed by the law of the State in which the sentence is imposed." 18 U.S.C. § 3596(a).

The Attorney General, acting entirely without the sanction of this Court, set an execution date 55 days from the date of the letter served on Mr. Vialva. The United States does not dispute the fact Texas law provides an execution date will be set no fewer than 91 days from the court order.[5] The actions of the Attorney General were contrary to federal law and the Department's own regulations. *Tipton* provides no support for the United States's position.

Faced with this obviously insupportable result, the United States urges this Court to "ratify" the current execution date, citing *United States v. Lee,* E.D. Ark. Case No. 4:97-cr-00243-LPR-2, 2020 WL 3921174 (July 10, 2020). The United States contends Mr. Vialva "cannot complain" if the Court "were to adopt the existing date" purportedly selected by the BOP.[6] The Arkansas district court's order in *Lee* is factually and legally distinguishable from the issue presented by Mr. Vialva.

Mr. Lee was challenging the validity of the notice he was provided June 15, 2020 advising him the Attorney General set a July 13, 2020 execution date. *Lee,* 2020 WL 3921174 at *5. However, Mr. Lee had failed to object to a similar notice provided July 25, 2019 advising him of a December 9, 2019 execution date. *Id.* at *2. There was no explanation for Mr. Lee's failure to raise the claim in the subsequent litigation that stayed the December 2019 execution, a fact cited by the

---

[5]In fact, Texas courts often set dates well in excess of 90 days from the execution order. The most recent order set a March 4, 2021 execution date. *See* Death Warrant, *State v. Ibarra*, No. 1996-634-C (54th Dist. Ct. Aug. 12, 2020).

[6]*Response*, Doc. 680 at 11.

district court as significant.  Moreover, Mr. Lee apparently did not raise a claim regarding the notice's

failure to comply with Arkansas law.  *Lee* is instructive in its distinction from Mr. Vialva's case.

**III.    Federal Law Requires an Order or Warrant Directing the United States Marshal to Supervise an Execution.**

The United States conflates the responsibility of the United States Marshals Service to

supervise the execution of an inmate with the authority to order an execution.  From this faulty

premise, the United States proceeds to misconstrue the legal significance of Attorney General Wirt's

opinion and its relevance to this case.[7]

The significance of Attorney General Wirt's opinion is that it stands as an early construction

of federal death penalty procedure that remains unmodified by a subsequent controlling Act of

Congress.  The opinion unambiguously establishes state law as prescribing the mechanism through

which an execution warrant is issued.  *See Death-Warrants,* 1 U.S. Op. Atty. Gen. 228, 1818 WL 440

("[T]he courts of the United States have adopted, in this particular, the practice of the State courts in

which they hold their sessions, and these are various: death-warrants from the governor being required

in several of the States; and in others the courts fixing the day."), *appended as Exhibit 2.*  Contrary

to the United States's argument, there is no "inherent" power vested in the President to issue an

execution warrant.  The President's power to issue warrants derives from the judicially constructed

rule of law directing that the law of the State governs execution warrant requirements.  *Id.*. The

purpose of General Wirt's emergency request to the Secretary of State was to alert the President to

the necessity of issuing a death warrant in conformity with the laws of Maryland.

---

[7]*Response*, Doc. 680 at 12-13.

Similarly, contrary to the United States's assertion, the Attorney General did not possess the independent authority to issue a death warrant because no law authorizes such action. No subsequent statute has vested the office of the Attorney General of the United States with the authority to act independently from the requirements of state law.

The FDPA unambiguously directs that the Attorney General will release the prisoner to the Marshal "who shall supervise the implementation of the sentence in the manner prescribed by the law of the State in which the sentence is imposed." 18 U.S.C. § 3596(a). Any arguable ambiguity about the role of state law in the "implementation" of a federal death sentence is resolved in the next sentence of the statute. If the State in which the sentence is imposed does not provide death as a penalty, "the *court* shall designate another State, the law of which does provide for the implementation of the sentence of death." *Id.* (emphasis added). In this case, Texas law provides for implementation of a sentence of death on a warrant issued by a court of competent jurisdiction. Texas law provides a minimum period between the issuance of the death warrant and the execution of the condemned. Texas law does not provide either the issuance of the warrant or modification of the statutory provisions can be effected by a member of the Executive Branch. The Attorney General's direction to the Bureau of Prisons and the Warden setting Mr. Vialva's execution date 55 days from the only notice he has ever received was unauthorized by federal law and violates the warrant requirements of Texas law.[8]

---

[8]The letter delivered by Warden Watson did not indicate why the Attorney General set an execution date 55 days from the date of the notice. In addition to violating the law of Texas which secures Mr. Vialva a minimum of 91 days, the abbreviated schedule is significantly less than the 137 days initially afforded Daniel Lee and the 139 days initially afforded Lezmond Mitchell. *See Lee,* 2020 WL 3921174 at *1; *United States v. Mitchell,* __ F.3d __, 2020 WL 4815961 at *1 (9th Cir. Aug. 19, 2020).

**IV.     Federal Law Requires the Court to Implement the Sentence of Death in a Manner Comporting with Texas Law.**

The United States reconstructs Mr. Vialva's argument into a contention federal law does not require the BOP to comply with Texas law in setting execution dates.[9]  Mr. Vialva is challenging the validity of the execution notice that was not issued by the Court in compliance with Texas law.  We agree with the United States that the issue of how to implement a federal death "in the manner prescribed by State law" presents a challenging question of statutory construction, as exemplified in its cited case, *In re Federal BOP Execution Protocol Cases,* 955 F.3d 106 (D.C. Cir. 2020) (*per curiam*) ("*Protocol Cases*").[10]   The United States's reliance on *Protocol Cases* to address Mr. Vialva's contention is misplaced.

Mr. Vialva is not challenging the method of execution the United States apparently intends to use through this motion.  The instant motion challenges the legality of the letter served by the Warden in lieu of a warrant issued by this Court in conformity with Texas law.  It does not raise issues regarding the detailed minutiae of the mechanics of the execution process devised by the United States.  None of the opinions in *Protocol Cases* addresses the issue of whether the Attorney General has the authority to sidestep the State law requirements of an execution warrant.  The opinion

---

[9]*Response*, Doc. 680 at 14.

[10]This is the most extensive opinion addressing the meaning of "manner" of implementing a death sentence and the extent to which the protocols of the State may govern an execution.  The three Circuit Judges' distinct interpretations reflect a spectrum of construction.  *See*  955 F.3d at 133-35 (Rao, C.J., concurring) (adhere to all state requirements expressed in statutes and regulations); *id*. at 146 (Tatel, C.J., dissenting) (adhere to all minutiae of execution procedures in state protocols); *op cit.* at 114 (Katsas, C.J., concurring) (adhere only to general manner of execution).  Unquestionably, this is an issue that must be resolved by the Supreme Court.  The "importance of clarifying the FDPA's meaning remains," in light of the "additional federal executions scheduled in the coming months."  *Mitchell v. United States*, 591 U.S. __, 2020 WL 5016765 (Aug. 25, 2020) (Sotomayor, J.), *appended as Exhibit 3.*

of Chief Judge Rao and the dissent of Judge Tatel clearly support the necessity of conforming to a fundamental State law requirement.  Judge Katsas's concern is allayed by the unambiguous State statute.  *See*  Tex. Code Crim. Proc. art. 43.141.

State law warrant requirements are vastly different from the detailed procedures involved in the mechanics of execution protocols.  Warrant requirements are readily ascertainable laws enacted by state legislatures that federal courts have been applying for federal executions prior to 1818.  Historically, Texas executes more than ten people every year.  Its system for judicially implementing death sentences is not a mystery, nor is it difficult for a federal court to fashion an order in conformity with those requirements.  In fact, Mr. Vialva has already spelled out the material requirements for a warrant that conforms to Texas law in his motion.[11]

The United States contends Mr. Vialva's request that his execution be carried out in conformity with federal law would undermine the FDPA because it would make executions impossible in some States. The United States leaps to this dubious conclusion by asserting it would be impossible for the BOP to obtain a warrant under the seal of a Texas court.[12]  The BOP is neither required nor authorized to undertake such a task.  The court that imposed the sentence is required to enter an order authorizing the implementation of the sentence of death in accordance with the law of the State in which it sits.  As discussed, the FDPA provides the mechanism through which the court selects an alternative State's death penalty law if none exists where it is sitting.  There is no danger of the chaos the United States is attempting to suggest.  The United States simply needs to comply with the law that exists.

---

[11]*Motion to Enjoin*, filed 08/14/2020, Doc. 675 at 9-10.

[12]*Response*, Doc. 680 at 16-17.

## V.      There Are No Equities to Weigh.

Finally, the United States argues the balance of harms weighs against enjoining the BOP's threatened actions.[13]  There are no equities to weigh.  The United States took eight years, from 2011 to 2019, to adopt a new execution protocol.  See *In re Matter of the Federal Bureau of Prisons' Execution Protocol Cases*, Case No. 1:19-mc-00145-TSC (D.D.C.), Dkt. 50 at 14.1  The United States has exhibited its current level of urgency to enforce death sentences only after  announcing the new protocol and scheduling the recent spate of  executions, including Mr. Vialva's.  The recency of this initiative undermines any notion that additional delay will cause significant harm to any legitimate federal interest. ""[N]o significant harm to the public interest could arise from the proper, informed, deliberate adjudication" of Mr. Vialva's claims.  *See Harris v. Johnson*, 323 F. Supp. 2d 797, 810 (S.D. Tex. 2004).

The United States is already subject to a court order not to execute Mr. Vialva.  No further order has issued by this Court directing the Marshal or any other agency of the Executive Branch to execute Christopher Vialva September 24, 2020, or on any other day.  Mr. Vialva seeks enforcement of the existing court order.  He requests that any future of this Court concerning his execution adhere to federal law by conforming to the warrant and other material requirements of Texas law governing executions.

## INJUNCTIVE RELIEF IS NECESSARY

Mr. Vialva is not seeking any form of extraordinary relief through this Motion.  He is requesting the enforcement of an existing order of this Court that the United States has announced it intends to violate.  He is requesting that any order directing his execution conform to the Judgment

---

[13]*Response,* Doc. 680 at 17.

and Texas law, as required by the FDPA.   This Court retains sole jurisdiction to enter such  an order. No further relief is being sought through this motion.

Mr. Vialva has not delayed bringing this Motion, which was filed 14 days after he was served with the Warden's letter.  He was not provided with any prior warning of the Attorney General's intention to select him for execution, nor has he acquiesced in the procedure adopted by the Attorney General. *Compare Mitchell*, 2020 WL 4815961 at *1.  The United States does not dispute that the notice provided in the letter does not conform to the requirements of Texas law.  The United States does not dispute that it failed to submit a proposed Order and Judgment to this Court as required by the Judgment and the regulations governing its conduct.  There is no substantial debate regarding the likelihood of Mr. Vialva's success on the issue he has raised.  The United States has failed to follow the law and its suggestion that the Court cure its failure by "ratifying" a notice that does not comply with the law is unavailing.

In light of the procedural posture of this case, an order enjoining the United States from proceeding with the September 24, 2020 execution is necessary to ensure conformity with federal law and the prior order of this Court.

Christopher Vialva, through counsel, requests this Court enter an order enjoining the Bureau of Prisons and the United States Marshals Service from executing Mr. Vialva until they have the legal authority to do so by further order of the Court.  Mr. Vialva requests that any such further order comply with Texas law governing the setting of execution dates and issuance of execution warrants. If the Court is considering issuing a further order setting a date of execution for Mr. Vialva, counsel requests an opportunity to be heard before such an order is entered.

Respectfully submitted,

s/Susan M. Otto
SUSAN M. OTTO   Oklahoma Bar # 6818
Federal Public Defender
MICHAEL LIEBERMAN  Oklahoma Bar #32694
Assistant Federal Public Defender Capital Habeas Unit
Federal Public Defender Organization
               Western District of Oklahoma
215 Dean A. McGee Suite 109
Oklahoma City, Oklahoma 73102
Telephone: 405 609-5930
Electronic mail: Susan_Otto@fd.org;
Michael_Lieberman@fd.org
COUNSEL FOR DEFENDANT
CHRISTOPHER ANDRE VIALVA

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of September, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Mr. Mark Frazier
Assistant United States Attorney
800 Franklin, Suite 280
Waco, Texas 76701
Counsel for Plaintiff

*Via electronic mail to*
Mark Stelmach
Assistant United States Attorney
Austin, Texas
Counsel for Plaintiff

Rob Owen
Law Office of Robert C. Owen, LLC
53 W. Jackson Blvd., Suite 1056
Chicago, IL 60604

John Carpenter
Assist. Federal Public Defender
1331 Broadway, Ste. 400
Tacoma, WA 98402
Counsel for Brandon Bernard

*s/Susan M. Otto*
SUSAN M. OTTO